IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Northwestern Illinois Area Agency on Aging, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 C 50070 |
| | ) | |
| vs. | ) | |
| | ) | |
| Paula Basta, et al., | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendants. | ) | |

**ORDER**

For the reasons stated below, defendant's motion to dismiss [46] is granted. Plaintiff's complaint is dismissed without prejudice. On or before September 29, 2023, plaintiff may file an amended complaint if it can do so consistent with the requirements of Fed. R. Civ. P. 11.

**STATEMENT-OPINION**

Plaintiff, Northwestern Illinois Area Agency on Aging ("NIAAA"), brings this action against defendant, Paula Basta, the Director of the Illinois Department of Aging, in both her official and individual capacities. Plaintiff's individual capacity claims are brought under federal law pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging defendant "knowingly deprived NIAAA of legal rights, including due process." Plaintiff's official capacity claims are brought under state law seeking to invalidate an administrative rule plaintiff alleges violates the Illinois Administrative Procedures Act, 5 ILCS 100/1-1 et seq. Jurisdiction is premised on the federal question and supplemental jurisdiction statutes. 28 U.S.C. §§ 1331 and 1367. Defendant moves to dismiss [46] pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

The Illinois Department on Aging ("Department") is the single Illinois state agency responsible for receiving and disbursing federal funds made available under the Older Americans Act ("OAA") (42 U.S.C. § 3001, et seq.). 20 ILCS 105/4. Plaintiff is designated by the Department as the "area agency on aging" ("AAA") for planning and service area 1 comprising Jo Daviess, Stephenson, Winnebago, Boone, Carroll, Ogle, DeKalb, Whiteside, and Lee counties. Plaintiff also is designated by the Department as a "regional administrative agency" ("RAA") for purposes of administering programs created by the Adult Protective Services Act, 320 ILCS 20/1 et seq. Pursuant to federal regulation, an AAA's functions include serving as the "public advocate for the development or enhancement of comprehensive and coordinated community-based systems of services in each community throughout the planning and service area." 45 C.F.R. § 1321.61.

On June 26, 2019, plaintiff filed a petition for administrative hearing ("Initial Petition") with defendant. Dkt # 25-2. The Initial Petition concerned funding plaintiff asserts it was denied in 2014-15. The Initial Petition states that at a meeting on April 8, 2019, plaintiff raised the issue of plaintiff being terminated as an RAA in a letter dated December 20, 2013 from then Department Director Holton. *Id.*, p. 4, par. 45. At the April 8, 2019 meeting, in response to this

1

question, Department employee Creamer stated she had been given an order in 2014 to withhold funding from plaintiff to retaliate against plaintiff for advocacy regarding a new APS Program Manual. *Id.*, par. 46.  Creamer did not say who gave her the order or give any details about funding she withheld from plaintiff. *Id.*, par. 47.  On April 15, 2019, plaintiff sent defendant an email asking her to investigate funding being withheld from plaintiff. *Id.*, p. 5, par. 53-54.  Defendant responded on June 11, 2019 stating she "cannot speak to the past practices." *Id.*, p. 5, par. 55-56.  The Department did not investigate the matter. *Id.*, p. 5, par. 57.  Plaintiff filed the Initial Petition on June 26, 2019.  By letter dated July 29, 2019 ("Initial Petition Denial"), from the Department's Deputy General Counsel, plaintiff was advised the request for hearing was denied because, according to the Initial Petition Denial, the Initial Petition did not present a "contested case" as defined in the Illinois Administrative Procedures Act and therefore no hearing would be accorded.

On August 23, 2019, plaintiff filed another petition for a hearing ("APS Petition") concerning the Department's rejection (by letter from defendant) of plaintiff's recommendations regarding designations of provider agencies under the Adult Protective Services Program ("APS") for Planning and Service Area 1.  By letter dated September 24, 2019 ("APS Petition Denial"), from the Department's Deputy General Counsel, the Department denied the request for hearing because, according to the APS Petition Denial, the APS Petition did not present a "contested case" and therefore no hearing would be accorded as the "Department properly exercised its oversight and discretion in rejecting [plaintiff's] recommendations."

Effective August 10, 2021, the Department adopted rules which allowed appeals by any "AAA when the Department proposes to: 1) Disapprove the area plan or any amendment to the area plan that has been submitted to the Department by the AAA; or 2) Reject the AAA's recommendation to designate a service provider," 89 Ill. Admin. Code 230.420 (d).  The rules provide for informal review of appeals by the Department's Office of General Counsel and appropriate Department Staff who will make recommendations (including recommending dismissal of the appeal) to the Department's Director. 89 Ill. Admin. Code 230.440.  The rules provide that the Department will provide an opportunity for a hearing after the informal review process is completed to "[a]ny AAA, upon request, when the Department proposes to: 1) Disapprove the area plan or any amendment to the area plan that has been submitted to the Department by the AAA; or 2) Reject the AAA's recommendation to designate a service provider." 89 Ill. Admin. Code 230.450 (a)(1) ("2021 Hearing Rule").

Plaintiff filed with defendant on September 29, 2021, a "Request for State Plan Appeal for Failing to Comply with the OAA" ("State Plan Appeal") requesting an administrative hearing and alleging the Department's state plan on aging did not comply with the OAA. Defendant issued a dismissal ("State Plan Dismissal") of plaintiff's appeal request because the request involved "allegations concerning the State Plan, rather than, the Area Plan or a service provider designation" which, according to the State Plan Dismissal, are the only matters on which an appeal by an AAA is allowed.

Plaintiff's complaint is arranged in ten counts.  The first five counts assert defendant is liable, in her individual capacity, pursuant to Section 1983.  Plaintiff alleges that the State Plan Dismissal violated plaintiff's hearing rights under the OAA (Count I); that defendant violated

2

plaintiff's right to function as the Public Advocate[1] by denying plaintiff hearings on the State Plan Appeal, Initial Petition, and APS Petition (Count II); that defendant's ongoing refusal to provide plaintiff an administrative hearing on the Initial Petition violates plaintiff's Fourteenth Amendment due process rights (Count III); that defendant's ongoing refusal to provide plaintiff with a hearing on the APS Petition violates plaintiff's Fourteenth Amendment due process rights (Count IV); and that the 2021 Hearing Rule adopted by defendant denies plaintiff its right to a hearing under the OAA and deprives plaintiff of due process rights (Count V).

The remaining five counts assert the official capacity claims, under state law, that the Hearing Rule is invalid because it conflicts with the OAA (Count VI); denies older adults due process hearings (Count VII); denies organizations due process (Count VIII); does not have necessary provisions for administrative hearings (Count IX); and is inconsistent with the OAA grievance procedures (Count X).

In its prayer for relief, plaintiff asks the court to find: 1) defendant unlawfully failed to provide plaintiff administrative hearings for the State Plan Appeal, Initial Petition and APS Petition; 2) violated plaintiff's due process, OAA, and other legal rights; and 3) that the Hearing Rule is invalid under the Procedure Act. It asks the court to order withdrawal of the Hearing Rule pursuant to Counts V-X; costs and attorneys' fees pursuant to 42 U.S.C. § 1988 for litigating Counts I-V; costs and attorneys' fees pursuant to 5 ILCS 100/10-55(c) for litigating Counts VI-X; and for damages on the Count I-V claims.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level, this requirement is met. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v, Iqbal, 556 U.S. 662 (2009).

<u>Statute of Limitations</u>

Plaintiff filed this case on February 28, 2022. The Initial Petition was denied on July 29, 2019 and the APS Petition was denied on September 24, 2019. An action under Section 1983 in Illinois has a two-year statute of limitations. This action was commenced more than two years after the denials of the Initial Petition and the APS Petition and, thus, claims based on those denials are untimely. Plaintiff argues that the failure to provide it with hearings on these matters is a continuing violation, but this is incorrect. Each denial was a discreet act from which plaintiff's alleged injury arose and from which it could have sought redress at the time. *Easterling v. Thurmer*, 880 F.3d 319, 323 (7th Cir. 2018). The limitations period has expired on claims arising from the Initial Petition Denial and the APS Petition Denial.

Plaintiff also contends its state court litigation (discussed below) tolled the limitations period. To support this proposition, plaintiff cites *Behavioral Institute v. Hobart City of Common Council*, 406 F.3d 926,932 (7th Cir. 2005) as implying that filing a Section 1983 action in state court tolls the statute of limitations under *Burford v. Sun Oil*, 319 U.S. 315 (1943). However,

---

[1] "Public Advocate" is not an entity or office distinct from an AAA. Rather, one of an AAA's functions is to serve as a public advocate as described in 45 C.F.R. § 1321.61.

*Behavioral Institute* notes that *Burford* deals with federal court abstention not tolling of a limitations period and rejects the hypothetical possibility a federal court might have abstained under *Burford* as a basis for tolling the limitations period. *Behavioral Institute*, 406 F.3d at 932. Moreover, as *Behavioral Institute* notes, tolling of a limitations period is governed by applicable state law. *Id.* Plaintiff has not identified any source of Illinois law on tolling. Plaintiff's claims arising from the denials of the Initial Petition and the APS Petition are barred by the statute of limitations.

### OAA

Section 1983 provides that every person who, under color of state law deprives any person of any rights, privileges, or immunities secured by the Constitution and laws of the United States shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983. Section 1983 actions may be brought against state actors to enforce rights "created by federal statutes as well as by the Constitution." *Gonzaga University v. Doe*, 536 U.S. 273, 279 (2002). For a plaintiff to recover under Section 1983 for an injury caused by a defendant's depriving the plaintiff of a right, privilege, or immunity secured by a federal statute, the statute must clearly manifest an unambiguous intent to confer individual rights upon a class of beneficiaries to which the plaintiff belongs. *Id.* at 285-86.

"*Gonzaga* sets forth our established method for ascertaining unambiguous conferral. Courts must employ traditional tools of statutory construction to assess whether Congress has unambiguously conferred individual rights upon a class of beneficiaries to which plaintiff belongs. Notably, it must be determined that Congress intended to create a federal right for the identified class, not merely that the plaintiffs fall within the general zone of interest that the statute is intended to protect." *Health and Hospital Corp. v. Talevski*, __ U.S. __, 143 S. Ct. 1444, 1457 (2023) (quotation marks and citations omitted) (emphasis in original). The "*Gonzaga* test is satisfied where the provision in question is phrased in terms of persons benefited and contains rights-creating, individual-centric language with an unmistakable focus on the benefited class. Conversely, we have rejected § 1983 enforceability where the statutory provision contain[ed] no rights-creating language; had an aggregate, not individual focus; and serve[d] primarily to direct the [Federal Government's] distribution of public funds." *Id.* (quotation marks and citations omitted) (alterations in original).

Plaintiff contends a provision of the OAA, 42 U.S.C. § 3027(a)(5), gives it a right to a hearing on the State Plan Appeal, the Initial Petition, and the APS Petition and, therefore, that defendant's refusal to give plaintiff hearings on these matters was a deprivation of that right allowing plaintiff to recover under Section 1983. The relevant statutory language is as follows:

"§ 3027. State plans

(a) Criteria for eligibility; contents

Except as provided in the succeeding sentence and section 3029(a) of this title, each State, in order to be eligible for grants from its allotment under this subchapter for any fiscal year, shall submit to the Assistant Secretary a State plan for a two-, three-, or four-year period determined by the State agency, with such annual revisions as are necessary, which meets such criteria as the Assistant Secretary may by regulation prescribe. If the Assistant Secretary determines, in the discretion of the Assistant Secretary, that a State

failed in 2 successive years to comply with the requirements under this subchapter, then the State shall submit to the Assistant Secretary a State plan for a 1-year period that meets such criteria, for subsequent years until the Assistant Secretary determines that the State is in compliance with such requirements. Each such plan shall comply with all of the following requirements:

(1) The plan shall—

(A) require each area agency on aging designated under section 3025(a)(2)(A) of this title to develop and submit to the State agency for approval, in accordance with a uniform format developed by the State agency, an area plan meeting the requirements of Section 3026 of this title; and
(B) be based on such area plans.

\*\*\*

(5) The plan shall provide that the State agency will—

(A) afford an opportunity for a hearing upon request, in accordance with published procedures, to any area agency on aging submitting a plan under this subchapter, to any provider of (or applicant to provide) services;"

42 U.S.C. § 3027

Plaintiff's argument is that, since it has submitted "a plan under this subchapter," it is entitled, by the plain language of Section 3027(a)(5), "to a hearing without limitation on the topic." Dkt # 66, p. 8. However, in its brief, plaintiff omits in its quotation of Section 3027(a)(5) the phrase "in accordance with published procedures" and argues as if this statutory language was not included. The meaning of the statute cannot be ascertained by ignoring some of the words in the statute. Given its failure to address the statute as written, plaintiff's argument is unpersuasive.

Moreover, the statutory language does not clearly manifest an unambiguous intent to confer individual rights upon a class of beneficiaries to which the plaintiff belongs. *Gonzaga*, 536 U.S. at 285-86. Section 3027 concerns the contents of a plan that a state must submit to the federal government in order to be eligible for grants under the OAA. Section 3027(d) provides for discontinuance of payments to a state if the state is not eligible under Section 3025 of the OAA (one of the conditions for eligibility is developing a state plan by be submitted under Section 3027) or if its plan no longer complies substantially with the provisions of Section 3027(a). One of the requirements for a state plan is Section 3027(a)(5)(A)'s provision that the state plan "afford an opportunity for a hearing upon request, in accordance with published procedures, to any area agency on aging submitting a plan under this subchapter, to any provider of (or applicant to provide) services."

The language of Section 3027 does not contain any rights-creating, individual-centric language with an unmistakable focus on the benefited class. *Talevski*, __ U.S. __, 143 S. Ct. at 1457. The language instead primarily serves to direct the distribution of public funds. *Id.* The language is directed toward the state and what it must do to obtain funding. It does not unambiguously state it is creating any right in any class of persons.

5

"Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Gonzaga*, 536 U.S. at 287 (quoting, *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001)). Section 3027 focuses on the person regulated (the State) not on any persons protected. Section 3027 addresses the requirements for a state's plan in order for the state to receive funding from the federal government. A key indicator that the statute does not confer rights on a particular class of persons, is Section 3027(d)'s provision that discontinuance of funding to the state can be avoided by *substantial compliance* with Section 3027(a). A statute that allows recipients of federal funds to avoid termination of funding so long as they "comply substantially" with the law's requirements, has an aggregate focus and is not concerned with whether the needs of any particular person have been satisfied and, therefore, does not support a Section 1983 suit. *Gonzaga*, 536 U.S. at 288. Plaintiff cannot proceed with a Section 1983 suit based on Section 3027.

As to the Initial Petition, plaintiff also claims Section 3026(f)(2) of the OAA required defendant to provide it a hearing on the issue of funding withheld from plaintiff. Section 3026(f) provides in relevant part:

> "**(f) Withholding of area funds**
>
> **(1)** If the head of a State agency finds that an area agency on aging has failed to comply with Federal or State laws, including the area plan requirements of this section, regulations, or policies, the State may withhold a portion of the funds to the area agency on aging available under this subchapter.
> **(2)(A)** The head of a State agency shall not make a final determination withholding funds under paragraph (1) without first affording the area agency on aging due process in accordance with procedures established by the State agency.
> **(B)** At a minimum, such procedures shall include procedures for--
> **(i)** providing notice of an action to withhold funds;
> **(ii)** providing documentation of the need for such action; and
> **(iii)** at the request of the area agency on aging, conducting a public hearing concerning the action."

Plaintiff does not identify which funds available under the OAA it believes were withheld from it in violation of Section 3026(f)(2). Its claim is based exclusively on the allegations made by plaintiff in the Initial Petition that Creamer said in April 2019 that she had been ordered by an unidentified person to withhold unidentified funding from plaintiff four or five years previously. These allegations are too speculative to state a claim upon which relief can be granted. Defendant was not the head of the Department at the time Creamer states she was ordered to withhold funding from plaintiff. There are no allegations from which it can plausibly be inferred that defendant ever made any decision to withhold OAA funding from plaintiff at any time. Nothing in the language of Section 3026(f)(2) suggests it applies to a situation where the state agency head is being asked to conduct a hearing to determine whether someone else before her tenure withheld OAA funding from an AAA without following the Section 3026(f)(2) process.

Due Process- Property Interest

Plaintiff also asserts defendant deprived it of property without due process in violation of the Fourteenth Amendment. Plaintiff contends it has a property interest under Illinois law. However, after plaintiff filed this case, the Illinois Supreme Court ruled that plaintiff had no right to a hearing on the Initial Petition or the APS Petition. *Nyhammer v. Basta*, No. 128354, 2022 WL 17245577 (Ill. Nov. 28, 2022). *Nyhammer* held, in dismissing a complaint for mandamus, that "to make a showing of clear entitlement to a hearing, a plaintiff must show that the decision presents a 'contested case' as defined in section 1-30 of the Procedure Act. 5 ILCS 100/1-30 (West 2018). Pursuant to section 1-30, an administrative decision presents a 'contested case' requiring a hearing if there is a source of law that requires the decision to be made after 'the opportunity for a hearing.' *Id.* Here, at the time these decisions were made, no statute, regulation, or constitutional provision required the decisions regarding funding AAAs or the approval of designations by RAAs be made only after an opportunity for hearing." *Nyhammer*, 2022 WL 17245577 at * 13. Accordingly, *Nyhammer*, held that because no source of law existed which required the Department's decision on those matters to be made only after granting NIAAA an opportunity for a hearing, neither the Initial Petition nor the APS Petition was a "contested case" under the Procedure Act and, therefore, NIAAA was not entitled to a hearing under the Procedure Act on either the Initial Petition or the APS Petition.

*Nyhammer* specifically held NIAA had no property interest in either funding or service provider designations which were the subjects of the Initial Petition and the APS Petition respectively. The Illinois Supreme Court stated: "[T]o have a property interest, there must be more than a unilateral expectation of the funding or approval of its service provider designations. Rather, NIAA must show a legitimate claim to entitlement to the funding or service provider designation for which it seeks a hearing." *Id.* at * 12 (citations omitted). "[W]e cannot say that NIAA has a constitutionally protected property interest because NIAA has not alleged facts explaining how, under objectively ascertainable criteria set forth in the law that limits the Department's discretion in some way, it is entitled to the 'other funding' or service provider designation approval that it seeks." *Id.* It did not appear to the Court that NIAA could make a showing that it had a legitimate claim of entitlement to the funding or service provider designations because "the relevant statutes and regulations grant the Department essentially unbridled discretion in administering the Protective Act and providing funding for programs for older Americans." *Id.* *Nyhammer* establishes that plaintiff had no protectable property interest in the subject of either the Initial Petition or the APS Petition.

Plaintiff also has not shown a protectable property interest in the subject of the State Plan Appeal. Plaintiff bases its right to a hearing on the State Plan Appeal on OAA Section 3027(a)(5)(A) which, as discussed above, does not support a Section 1983 action. Plaintiff has not cited any state law which creates a protectable property interest in an AAA in the contents of a state plan required by Section 3027 for a state to receive OAA funding. Therefore, plaintiff cannot bring a Section 1983 action to seek relief for the State Plan Dismissal or to challenge the validity of the 2021 Hearing Rule.

Based on the foregoing, all plaintiff's asserted federal claims (Counts I-V) must be dismissed. "Absent unusual circumstances, district courts relinquish supplemental jurisdiction over pendant state law claims if all claims within the court's original jurisdiction have been resolved before trial." *Coleman v. City of Peoria*, 925 F.3d 336, 352 (7th Cir. 2019). No unusual

circumstances are present here. Accordingly, the court exercises its discretion and relinquishes supplemental jurisdiction over the state law claims.[2]

Normally, when a court dismisses a complaint, it should allow the plaintiff an opportunity to file an amended complaint. *Runnion ex re. Runnion v. Girl Scouts for Greater Chicago*, 786 F.3d 510, 518 (7th Cir. 2015). The court will allow plaintiff to file an amended complaint if it believes it can do so consistent with the requirements of Fed. R. Civ. P. 11.

For the foregoing reasons, defendant's motion to dismiss [46] is granted. Plaintiff's complaint is dismissed without prejudice. On or before September 29, 2023, plaintiff may file an amended complaint if it can do so consistent with the requirements of Fed. R. Civ. P. 11.

Date: 8/16/2023              ENTER:

*Philip G. Reinhard*
United States District Court Judge

Electronic Notices.

---

[2] Because the foregoing resolves the motion to dismiss, the court need not address the other arguments raised by defendant in support of its motion.